HEWELL v. CHERRY.—158 S. W. (2d) 370.

Middle Section. November 26, 1941.

Petition for Certiorari denied by Supreme Court, February 7, 1942.

Robert L. McReynolds, of Clarksville, for plaintiff in error, A. D. Hewell.

W. M. Daniel and W. M. Daniel, Jr., both of Clarksville, for defendant in error, I. W. Cherry.

FELTS, J.   This is a writ of error by which A. D. Hewell seeks a review of the action of the circuit court in dismissing his petition for certiorari and supersedeas and in rendering judgment against him in favor of defendant in error I. W. Cherry for $298.28 and costs. His petition was on the pauper's oath.   The ground of the court's action was that he was not a pauper and not entitled to proceed in forma pauperis.   Whether he was so entitled is the question for decision.

Cherry recovered a judgment against him and his brother, W. A. Hewell, for $294.70, on January 2, 1941, in the court of general sessions.   When the judgment was announced, he stated that he would appeal.   The judge told him that the appeal bond would be "double the amount of the judgment."   He stated that he would "see about making the bond," and if he could not make it, he would appeal on the pauper's oath.   The attorney for Cherry objected that he had "an abundance of property;" and the attorney said he desired "to be present and have the court qualify Mr. Hewell."   After trying unsuccessfully for two days to make the bond, he tendered to the judge his pauper's oath for an appeal on January 4, 1941.   The judge declined to allow him to appeal on the oath, but told him that the judgment "would not be written down on the 2nd," and that he might have until January 9 and, if he could not make the bond, to come back to qualify and take the oath.   He returned January 9, and was sworn and questioned; and the judge, concluding that he had sufficient property to require him to make the bond, declined to allow him to appeal on the oath.

The judgment, however, was entered on January 2.   W. T. Perry, constable, on January 10, procured an execution which by inadvertence was not signed; but he nevertheless made a nulla bona return of it the same day.   On the next day, January 11, Cherry filed a bill in the chancery court of Montgomery County against A. D. Hewell, W. A. Hewell and other parties as mortgagees, alleging that the Hewells had no property subject to execution, and were insolvent, and owned certain real estate and crops, which were encumbered by the mortgages described; and the bill sought to subject their equities in the land and crops to the satisfaction of the judgment.

On the same day, January 11, A. D. Hewell filed in the circuit court his petition for certiorari and supersedeas, stating the foregoing

facts and praying for a writ of certiorari to bring the case before the circuit court to be retried and for a writ of supersedeas to stay further proceedings on the judgment. The petition also alleged that the judgment was unjust, that it had been rendered on a note and an account, that he owed only between $50 and $100 on the note and nothing on the account, the latter being his brother's account, that the proceeds of a crop of tobacco had been paid to Cherry with instructions to apply such money on the note, but Cherry had instead applied it on the account of his brother. Honorable John T. Cunningham, Judge of the Criminal Court, granted a fiat on January 11, 1941 directing the clerk of the circuit court to issue the writs of certiorari and supersedeas, the petitioner, A. D. Hewell, having executed the pauper's oath in lieu of bond.

On the same day, January 11, 1941, Cherry filed a written motion in the circuit court to dismiss the petition and to quash the writs. There were some eight grounds of the motion, but most of them were to the effect that petitioner, A. D. Hewell, was not entitled to prosecute the petition on the pauper's oath because he owned property worth some $2000 above the encumbrances thereon. Other grounds of the motion were overruled and need not be here stated. The circuit court heard the motion on March 8, 1941. On this hearing respondent Cherry read the affidavits of himself, his counsel and the judge of the court of general sessions, and called the latter as a witness. Petitioner A. D. Hewell testified for himself. The circuit court took the motion under advisement until March 15, 1941. He found that petitioner owned property worth between $1700 and $2000 above the encumbrances thereon, dismissed the petition, and rendered judgment against petitioner in favor of Cherry for $298.28 (the amount of the general sessions court judgment and interest) and costs.

A. D. Hewell made a motion for a new trial, which motion was overruled, and he prayed an appeal in error, which was granted upon the condition that he make an appeal bond in double the amount of the judgment. He did not make the bond, but filed his pauper's oath in lieu of a bond. The clerk sent up the transcript.

On motion of Cherry we have heretofore dismissed the appeal for the reason that an appeal granted on the condition that a bond be made cannot be perfected by taking the oath. Jourolmon v. West, 15 Tenn. App., 203, 208, and cases there cited. Also we have heretofore granted a supersedeas on the pauper's oath of petitioner, after notice to respondent.

Upon the evidence heard by the circuit court, there was no dispute as to the facts. From the affidavit and the testimony of the judge of the general sessions court it appeared that petitioner, upon being questioned under oath as to his right to take the pauper's oath, stated that he owned a one-half undivided interest in two tracts of land. One of these tracts was estimated to be worth about $4000 and the other between $400 and $500. Petitioner's interest in the tract said

to be worth $4000 was encumbered by a mortgage for $500. His interest in the other tract was unencumbered. He also had a crop of tobacco, estimated to be worth some $400, encumbered by a mortgage for $160. Petitioner was unmarried. Petitioner testified that he owned the property and it was encumbered, as stated. He said he had sold the tobacco and it netted him only $60 or $65 above the encumbrances, and he offered to deposit this money with the clerk of the circuit court as security for his appeal. He also testified that he had tried diligently to get some solvent person to sign his appeal bond, but had been unable to do so. He proposed to mortgage everything he had to the circuit court clerk to secure any judgment that might be rendered against him in this case.

█ Upon these facts we think petitioner was entitled to appeal in forma pauperis, and when the judge of the court of general sessions denied him such an appeal, he was entitled to prosecute the petition for certiorari and supersedeas on the pauper's oath. The court of general sessions has the jurisdiction of a justice of the peace. Chapter 113, Private Acts of 1937. Any person dissatisfied with a judgment of a justice of the peace may, within two days, appeal to the circuit court by giving bond or taking the pauper's oath. Code sections 9019, 9020. Code section 9080 is in part as follows:

''Except for false imprisonment, malicious prosecution, slanderous words, and for absolute divorce, any resident of this state may commence an action without giving security as above required by taking and subscribing the following oath in writing: 'I, A B, do solemnly swear, that, owing to my poverty, I am not able to bear the expense of the action which I am about to commence, and that I am justly entitled to the relief sought, to the best of my belief.' . . .''

█ This statute has been held to extend the right to proceed on the pauper's oath to appeals, appeals in error, and writs of error, and writs of certiorari and supersedeas in lieu of an appeal. Scott v. Brandon, 125 Tenn., 314, 317, 143 S. W., 601; Caruther's History of A Law Suit (5 Ed.), 395; Gardner v. Barger, 51 Tenn. (4 Heisk.), 668, 669. Upon a proper showing a supersedeas or an attachment may be had on the pauper's oath. Code sec. 8999; Doty v. Federal Land Bank of Louisville, 173 Tenn., 140, 114 S. W. (2d) 953. Code section 9085 provides:

''If it be made to appear to the court, at any time before the trial, by the testimony of disinterested persons, that the allegation of poverty is probably untrue, or the cause of action frivolous or malicious, the action may be dismissed. The burden shall be upon a pauper to justify his oath.''

Counsel for Cherry rely on Woods v. Bailey, C. C., 122 F., 967; Moyers v. Moyers, 58 Tenn. (11 Heisk.), 495, and Fort v. Noe, 144 Tenn., 337, 233 S. W., 516. We think these cases are not in point. The Woods case was a decision of a federal court in Pennsylvania

under the federal statutes, and is not an authority for the construction of our statutes. Moyers v. Moyers was a divorce suit by a husband against his wife. He had given a bond for costs and his surety moved that he be required to give counter security. He thereupon filed the pauper's oath. The court dispaupered him upon the motion of the wife because it appeared that he had about $500 in money and his surety owed him about $400. In Fort v. Noe the defendant had appealed on the pauper's oath from a judgment for $158.78, rendered against him by a justice of the peace. It was shown in the circuit court by disinterested witnesses, without denial on his part, that he owned real and personal property worth more than $5000. Upon such showing it was held that he could not prosecute his appeal on the pauper's oath. But the court recognized that the statute should be liberally construed in favor of the rights of poor persons to prosecute actions in forma pauperis.

In Fiske et al. v. Grider, 171 Tenn., 565, 106 S. W. (2d) 553, it was held that one could not be dispaupered upon the evidence of his adversary in the suit. After quoting Code section 9080, the court said:

"The legislative intent is clearly expressed in the statute just quoted, viz., that all actions may be prosecuted in forma pauperis, except those for (1) false imprisonment; (2) malicious prosecution; (3) slanderous words; and (4) for absolute divorce. The law is very liberal in allowing the prosecution of suits in forma pauperis. Heatherly v. Bridges, 48 Tenn. (1 Heisk.), 220. The object of this rule is to place the weak on a level with the strong, in a contest for their rights in a court of justice. Andrwes v. Page, 49 Tenn. (2 Heisk.), 634; Barber v. Denning, 36 Tenn. (4 Sneed), 267."

In Heatherly v. Hill, 67 Tenn. (8 Baxt.), 170, it was held error to dispauper one who was not shown to have any property above his exemptions. In this case the court said:

"It is impossible to lay down a rule which will govern in every case in determining whether a party should be depauperized or not. Much must be left to the sound discretion of the judge who tries the question, but on such trials the uniform language of this court has been, that the laws passed to enable poor persons to litigate their rights in court should be construed and administered with great liberality. This is especially so, in view of our liberal policy in exempting property from execution. Without undertaking to lay down a general rule we are content to hold, that upon the proof in this case we do not think that the law has been administered in that spirit of liberality which should characterize such proceedings. It was requiring too much of a party with so little property, and that exempt from execution, to give bond and security in an amount larger, probably, than the entire value of his property, or be deprived of the right to have his cause tried. We are of opinion that, according to the proof, the circuit judge failed to exercise a sound discretion

in making the rule absolute, but that the same should have been dismissed.''

To the same effect, see Campbell v. Lee, 12 Tenn. App., 293, 296, 297.

In the present case it appears without dispute that petitioner A. D. Hewell was unable to get any solvent person to sign the bond required of him. The amount of this bond was approximately $600, two or three times the value of his unencumbered property. Strictly speaking, he did not own the encumbered property, the legal title being in the mortgagees, and all he owned was an equity, which on foreclosure sale of the property, might be much or little, depending upon the contingencies and circumstances existing at the time of the sale. He offered to mortgage everything he had as security for his appeal, which at least showed his good faith. Under these circumstances, to deny him the right to proceed on the pauper's oath, as both of the lower courts did, is to deny him his day in court. To hold that one who owns property but who is so involved in debt and whose property is so encumbered that he actually cannot give security, cannot proceed in forma pauperis is to defeat the purpose of our statutes to place the weak on a level with the strong and to allow every man, rich or poor, his day in court.

For these reasons the judgment of the circuit court is reversed and the case is remanded to that court for a trial on the merits. The respondent I. W. Cherry will pay the costs of the writ of error.

Crownover, P. J., and Howell, J., concur.